Matter of Pellegrino (2025 NY Slip Op 00605)

Matter of Pellegrino

2025 NY Slip Op 00605

Decided on January 31, 2025

Appellate Division, Fourth Department

Per Curiam

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on January 31, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: LINDLEY, J.P., OGDEN, NOWAK, DELCONTE, AND KEANE, JJ. (Filed Jan. 17, 2025.)

&em;

[*1]MATTER OF DOMINIC. PELLEGRINO, AN ATTORNEY, RESPONDENT. GRIEVANCE COMMITTEE OF THE FIFTH JUDICIAL DISTRICT, PETITIONER.

OPINION AND ORDER
Order of disbarment entered.
Per Curiam
Opinion: Respondent was admitted to the practice of law by this Court on July 9, 1975, and he maintains an office in Utica. The Grievance Committee has filed a petition and supplemental petition alleging numerous charges of professional misconduct against respondent, including neglecting client matters, engaging in self-interested business transactions with clients, failing to remit funds to clients in a timely manner, and engaging in conduct involving dishonesty or deceit. Respondent filed an answer to the petition and supplemental petition denying material allegations therein, and this Court appointed a referee to conduct a hearing. During preliminary proceedings before the Referee, respondent admitted almost all of the allegations he had previously denied, obviating the need for a fact-finding hearing. The Referee has filed reports directed to the petition and supplemental petition sustaining the disciplinary rule violations alleged therein. The Grievance Committee moves to confirm the reports of the Referee and for a final order of discipline. In response to the motion, respondent submits written materials in mitigation. Respondent also appeared before this Court on the return date of the motion, at which time he was heard in mitigation.
With respect to charge one of the petition, respondent admits that, in or around 1994, he arranged for two clients to take a mortgage loan in the total amount of $75,000 from several other clients, without advising each party to the transaction to seek the advice of independent counsel. Respondent admits that, by October 2004, all but one of the mortgagees had died or withdrawn from the transaction. Respondent further admits that, based on his advice, the sole remaining mortgagee, who had funded the transaction using funds from her individual retirement account (IRA), agreed to remain a participant in the transaction and lend IRA funds to the mortgagors in excess of $35,000. Respondent admits that the parties to the loans thereafter agreed that the mortgagors would make monthly payments, beginning on November 1, 2004, with respondent serving as receiver. Respondent admits that, although the mortgagors were habitually delinquent in making the required monthly payments from November 2004 through June 2013, he failed to disclose the delinquency to the mortgagee and failed to advise the mortgagors of the potential legal consequences of their defaults. Respondent admits that, from July through December 2013, the mortgagors made lump-sum payments to respondent satisfying their loan obligations to the mortgagee through April 1, 2015. Respondent admits that, after receiving those lump-sum payments, he failed to advise the mortgagors that they had prepaid their obligations under the loan, nor did he forward the excess funds to the mortgagee's IRA custodian. Respondent admits that, in correspondence addressed to the mortgagee dated September 7, 2015, he stated that he had lost the ability to deposit funds with the IRA custodian. Respondent admits, however, that the correspondence was addressed to an incorrect zip code and never received by the mortgagee. Respondent further admits that his statement that he had lost the ability to deposit funds with the IRA custodian was inconsistent with other available documentation showing that a recent payment was accepted by the IRA custodian. Respondent also admits that he produced to the Grievance Committee copies of letters addressed to the mortgagee dated March 3, 2016, February 2, 2017, and January 4, 2018, wherein he stated that he had lost the ability to deposit funds with the IRA custodian and requested that the mortgagee provide guidance about how to proceed. Respondent admits that those letters were each addressed to an incorrect zip code and never received by the mortgagee, and he made no other effort to contact the mortgagee during the relevant time period. Respondent admits that, in correspondence dated May 15, 2018, the mortgagee requested that he remit all funds owed to the IRA and provide an accounting or reconciliation of accounts related to the mortgage loan, but respondent did not reply and failed to make payment or provide an accounting. Respondent admits that, in the summer of 2018, the IRA custodian ceased making disbursements to the mortgagee and that, in correspondence dated October 21, 2018, the mortgagee reiterated her request that respondent remit all funds owed to the IRA and provide documentation regarding the loans. Respondent admits that, although he was holding funds received from the mortgagors in [*2]excess of $18,000 in his attorney trust account when he received that request, he did not make any payment to the IRA custodian until February 2019.
With respect to charge two of the petition, respondent admits that, from August 2015 through February 2019, he received loan payments from the aforementioned mortgagors in excess of $21,000, which he failed to remit to the mortgagee in a timely manner. Respondent admits that, although he maintained the funds in his attorney trust account, he did not advise the mortgagors that he was holding their funds, nor did he deposit the funds into an interest-bearing account for their benefit.
The supplemental petition contains a single charge of misconduct against respondent arising from four separate client matters. With respect to the first such client matter, respondent admits that he borrowed $30,000 from a client in February 1999 pursuant to a promissory note, without providing security for the debt or advising the client to seek the advice of independent counsel. The client died in 2008. Respondent admits that, in March 2008, he prepared an instrument whereby one of the client's surviving children transferred his interest in the promissory note to his two sisters. Respondent further admits that he transferred the loan to the sisters without legal authority to do so and despite the fact that a Surrogate's Court proceeding had not been commenced on behalf of the estate of the deceased client. Respondent admits that, from 2008 through 2021, he failed to make timely payments to the two sisters or advise them of his own delinquency. Respondent further admits that, in April 2022, he sent checks to the two sisters indicating he was satisfying his obligations under the promissory note, together with a general release. Respondent admits that the two sisters consulted independent counsel, after which respondent sent payments to them that were not identified as "payment in full." Respondent admits that, as of the date of the supplemental petition, he had failed to pay the balance of the amount due and owing under the promissory note.
With respect to the second client matter specified in the supplemental petition, respondent admits that, in September 1998, he solicited a loan from two clients, a married couple, by presenting the loan as an "investment mortgage" paying interest at a rate higher than the prevailing market rate for certificates of deposit. Respondent admits that, in December 1998, he borrowed $20,000 from the clients without providing security for the loan, advising them to seek the advice of independent counsel, or executing a promissory note. The husband died in 2004. Respondent admits that, from December 2013 through December 2022, he failed to make the agreed-upon loan payments and did not disclose his delinquency to the remaining client. Respondent admits that, after the wife died in 2020, he transferred his loan obligation to the clients' two children, without legal authority to do so and despite the fact that the loan was an asset of the wife's estate and a Surrogate's Court proceeding had not been commenced on her behalf. Respondent admits that, in April 2022, he sent checks to the clients' children alleging that the debt was paid in full, together with general releases, which neither child executed.
With respect to the third client matter specified in the supplemental petition, respondent admits that, from June through November 2001, he borrowed a total of $28,000 from a client pursuant to three loan agreements, each having a five-year repayment plan. Respondent admits that he did not advise the client to seek the advice of independent counsel with respect to any of those transactions. Respondent further admits that, in 2007, he prepared a will and revocable trust for the client, who was unmarried and had no children. Respondent admits that, from October 2011 through April 2014, he failed to make any payments to the client, but in May 2014 he made a lump-sum payment to the client in excess of $24,000. Respondent admits that the lump-sum payment did not represent the full amount he owed to the client, and that, as of the date of the supplemental petition, he had not made any payments to the client since May 2014.
With respect to the fourth client matter specified in the supplemental petition, respondent admits that, in May 2012, he accepted $10,000 from a client to assist her with estate planning issues, without executing a retainer agreement or letter of engagement. Respondent admits that he had only occasional contact with the client from May 2012 through February 2016, after which he had no contact with the client until she requested a refund of her retainer payment in April 2021. Respondent admits that, in response, he assured the client that he would reply after reviewing her file, but he did not thereafter issue a refund or otherwise respond to the client. Respondent admits that the client emailed him again in August 2021, but he did not respond to the client or issue a refund until November 2022.
We confirm the factual findings of the Referee, find respondent guilty of professional [*3]misconduct, and conclude that he has violated the following provisions of the Rules of Professional Conduct (22 NYCRR 1200.0):
rule 1.1 (c) (2)—intentionally prejudicing or damaging a client during the course of a representation;
rule 1.3 (a)—failing to act with reasonable diligence and promptness in representing a client;
rule 1.3 (b)—neglecting a legal matter entrusted to him;
rule 1.4 (a) (1) (iii)—failing to promptly inform a client about material developments in a matter;
rule 1.4 (a) (3)—failing to keep a client reasonably informed about the status of a matter;
rule 1.4 (a) (4)—failing to comply in a prompt manner with a client's reasonable requests for information;
rule 1.8 (a)—entering into a business transaction with a client where he and the client have differing interests and the client expects him to exercise professional judgment for the protection of the client;
rule 1.15 (c) (4)—failing to deliver to a client or third person in a prompt manner, as requested by the client or third person, funds in his possession that the client or third person is entitled to receive;
rule 8.4 (b)—engaging in illegal conduct that adversely reflects on his honesty, trustworthiness, or fitness as a lawyer;
rule 8.4 (c)—engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation;
rule 8.4 (d)—engaging in conduct that is prejudicial to the administration of justice; and
rule 8.4 (h)—engaging in conduct that adversely reflects on the lawyer's fitness as a lawyer.
We further conclude that respondent has violated 22 NYCRR 1215.1 by failing to provide to a client, within a reasonable period of time, a letter of engagement or retainer agreement setting forth an explanation of the scope of the legal services to be provided and attorneys' fees to be charged.
We note that our determinations regarding the disciplinary rule violations specified herein are based on respondent's conduct that occurred on or after April 1, 2009, the effective date of the Rules of Professional Conduct. We also decline to sustain charge three of the petition, which alleges that respondent has engaged in a course of conduct that adversely reflects on his fitness as an attorney based, at least in part, on conduct for which he previously received a letter of caution and an admonition from the Grievance Committee. As this Court has repeatedly held, "allegations that a respondent has engaged in a course of conduct based in part on conduct that has been addressed in prior disciplinary proceedings are more appropriately considered as a potential aggravating factor, rather than as a separate charge of professional misconduct" (Matter of Cote, 171 AD3d 167, 171 [4th Dept 2019], see Matter of Berg, 150 AD3d 9, 12 [4th Dept 2017]; Matter of Horton, 115 AD3d 193, 196 [4th Dept 2014]; Matter of Ohl, 107 AD3d 106, 110 [4th Dept 2013]).
In determining an appropriate sanction, we have considered numerous aggravating factors, including that the aforementioned letter of caution and admonition arose from conduct similar to that at issue in this case, including representing differing interests in a legal matter and taking a personal loan from a client, failing to make required loan payments, and failing to adequately advise the client regarding his own defaults. Moreover, the record establishes that respondent has engaged in a pattern of initiating self-interested transactions with clients or breaching his legal and ethical obligations to clients, thereby causing them direct harm or substantial prejudice, in many cases for his own benefit or personal gain. Of particular concern is that respondent targeted clients who were likely to be vulnerable to his manipulation, including the elderly or individuals inexperienced in financial matters. We also conclude that respondent's submissions to this Court offer various explanations for his conduct at issue in this proceeding that are unpersuasive or lack credibility, which in our view demonstrates his lack of remorse and inability to acknowledge the extent of his wrongdoing. Accordingly, after consideration of all of the factors in this matter, we conclude that respondent is unfit to practice law and should be disbarred.